# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2005-44, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-44,<br><br>     Plaintiff,<br> vs.<br><br>HIGH NOON AT ARLINGTON RANCH HOMEOWNER'S ASSOCIATION; and SFR INVESTMENTS POOL 1, LLC,<br><br>     Defendants.<br>_____<br>SFR INVESTMENTS POOL 1, LLC<br><br>     Counter/Cross-Claimant,<br> vs.<br><br>THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2005-44, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-44,<br><br>     Counter/Cross-Defendant. | Case No.: 2:17-cv-00332-GMN-EJY<br><br>**ORDER** |

   Pending before the Court is the Motion for Summary Judgment, (ECF No. 43), filed by Plaintiff Bank of New York Mellon ("BNYM"). Defendant and Counter/Cross-Claimant SFR

Investments Pool 1, LLC ("SFR") filed a Response, (ECF No. 59), and BNYM filed a Reply, (ECF No. 67).

Also pending before the Court is SFR's Motion for Summary Judgment, (ECF No. 46). BNYM filed a Response, (ECF No. 58), and SFR filed a Reply, (ECF No. 68).

Also pending before the Court is SFR's Motion for Default Judgment, (ECF No. 45), as to Les. P. Taylor ("Borrower"). Borrower did not file a response.

For the reasons discussed below, BNYM's Motion for Summary Judgment is **GRANTED**. SFR's Motion for Summary Judgment is **DENIED**, and its Motion for Default Judgment is **GRANTED**.

**I.      BACKGROUND**

This case arises from the non-judicial foreclosure sale of real property located at 9460 Thunder Sky Street #102, Las Vegas, NV 89178 (the "Property"). (*See* Deed of Trust, Ex. 1 to BNYM's MSJ, ECF No. 43-1). On August 16, 2005, Borrower obtained a loan from Countrywide Home Loans, Inc. in the amount of $238,000.00, secured by a deed of trust ("DOT") identifying Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary, which was recorded on August 24, 2005. (*Id.*). MERS then assigned its interest to BNYM. (Assignment, Ex. 2 to BNYM's MSJ, ECF No. 43-2).

On March 11, 2009, upon Borrower's failure to stay current on his loan obligations, High Noon at Arlington Ranch Homeowner's Association ("HOA") initiated foreclosure proceedings on the Property through its agent, Alessi & Koenig, LLC ("A&K"), by recording a Notice of Delinquent Assessment Lien. (Notice of Delinquent Assessment Lien, Ex. 4 to BNYM's MSJ, ECF No. 43-4). A&K subsequently recorded a Notice of Default and Election to Sell on April 30, 2009. (Notice of Default, Ex. 7 to BNYM's MSJ, ECF No. 43-7). On January 4, 2011, A&K recorded a Notice of Trustee Sale. (First Notice of Trustee Sale, Ex. 8 to BNYM's MSJ, ECF No 43-8).

On March 15, 2011, BAC Home Loans Servicing LP ("BAC"), as the servicer of the DOT, through its counsel Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer"), sent a letter to A&K offering to pay the superpriority amount owed on the HOA's lien. (*See* First Miles Bauer Letter, Ex. 1 to Miles Bauer Aff., ECF No. 43-9). A&K responded with a full accounting, itemizing the amounts Borrower owed. (*See* Accounting, Ex. 10 to BNYM's MSJ, ECF No. 43-10). The accounting indicated that the superpriority portion of the HOA's lien—nine months of $58.00 in HOA dues and no maintenance and nuisance abatement charges—totaled $522.00. (*See id.*). Miles Bauer then tendered $592.20 on BAC's behalf to ensure that the superpriority portion of the HOA's lien had been "paid in full." (Second Miles Bauer Letter, Ex. 3 to Miles Bauer Aff., ECF No. 43-9).

Despite Miles Bauer's tender, HOA, through A&K, recorded a second Notice of Trustee Sale on February 5, 2015. (Second Notice of Trustee Sale, Ex. 11 to BNYM's MSJ, ECF No. 43-11). A&K proceeded with foreclosure and sold the property to HOA for $10,679.57 on March 6, 2013, and HOA recorded the foreclosure deed on November 5, 2013. (Foreclosure Deed, Ex. 12 to BNYM's MSJ, ECF No. 43-12). HOA then conveyed the property to SFR by a quitclaim deed recorded on November 5, 2013. (*See* Quitclaim Deed, Ex. 14 to BNYM's MSJ, ECF No. 43-14). BNYM and SFR primarily seek summary adjudication regarding whether BNYM's DOT survived the foreclosure sale of the Property. (*See generally* MSJs, ECF Nos. 43, 46). SFR also seeks a declaration that neither Borrower nor any of his successors or assigns have any right, title, or interest in the Property. (*See generally* Mot. Default J., ECF No. 45).

## II. LEGAL STANDARD

### a. Motion for Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

**b. Motion for Default Judgment**

Obtaining a default judgment is a two-step process governed by Rule 55 of the Federal Rules of Civil Procedure. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, the moving party must seek an entry of default from the clerk of court. Fed. R. Civ. P. 55(a). Then, after the clerk of court enters default, a party must separately seek entry of default judgment from the court in accordance with Rule 55(b). Fed R. Civ. P. 55(b). Upon entry of a clerk's default, the court takes the factual allegations in the complaint as true. Nonetheless, while the clerk's entry of default is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether to grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified several relevant factors in determining whether to grant default judgment including: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong public policy favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

## III. DISCUSSION

BNYM and SFR move for summary judgment on their competing quiet title claims. (BNYM's MSJ 4:6–5:13); (SFR's MSJ 9:13–23:2, ECF No. 46). BNYM argues that its first DOT continues to encumber the Property because its loan servicer, BAC, satisfied the HOA superpriority lien by tendering payment of $592.20 to A&K. (BNYM's MSJ 4:6–5:13).

Conversely, SFR asserts the HOA foreclosure sale was validly conducted and consequently caused the extinction of BNYM's DOT. (SFR's MSJ 19:2–21:21). SFR also argues that BNYM, as lienholder, is neither entitled to an equitable remedy nor a right of redemption. (*Id.* 18:1–19:1). SFR also argues that BNYM's quiet title claim is time-barred. (*Id.* 9:13–17:15).

Additionally, SFR seeks a declaration that neither Borrower nor any of his successors or assigns have any claim of right, title, or interest in the Property. (Mot. Default J. 4:23–25, ECF No. 45).

### a. Quiet Title

#### i. Statute of Limitations

The Court first addresses SFR's statute of limitations arguments, because, if it is correct that BNYM's claims are time-barred by the three-year limitations period under NRS 11.190(3)(a), the Court need not proceed. The Court, having previously addressed this issue in similar matters, concludes that BNYM's quiet title claim is not time-barred.

The Court finds that BNYM's quiet title claim is governed by the five-year limitations period set forth in NRS 11.070, which applies to a "cause of action or defense to an action, founded upon title to real property." Nev. Rev. Stat. 11.070. A quiet title claim is reciprocal in nature as it "requests a judicial determination of all adverse claims to disputed property." *Del Webb Conservation Holding Corp. v. Tolman*, 44 F. Supp. 2d 1105, 1110 (D. Nev. 1999) (citing *Clay v. Scheeline Banking & Trust Co.*, 159 P. 1081, 1082–83 (Nev. 1916)).

The adverse claims here are between BNYM, a lienholder, and SFR, a titleholder. The essence of BNYM's requested relief (a declaration as to the viability of the deed of trust) is necessarily a challenge to SFR's interest. *See Clay*, 159 P. at 1082 ("[O]ne of the essentials of a good complaint in such an action is that [the plaintiff] must show that the defendants claim an interest in the property adverse to the plaintiffs."). Indeed, should BNYM obtain its requested remedy of invalidating the foreclosure sale, SFR would be divested of its title. Because the Court must adjudicate the competing interests here, including the asserted title interest, the action is founded upon title.[1]

For claims that arise from the non-judicial foreclosure of real property, the statute of limitations begins to accrue at the time of the foreclosure sale. *Saticoy Bay LLC Series 2021 Gray Eagle Way v. JPMorgan Chase Bank*, 388 P.3d 226, 232 (2017); *US Bank N.A. v. BDJ Invs., LLC*, No. 2-16-cv-00866-GMN-PAL, 2018 U.S. Dist. LEXIS 168657, 2018 WL 4705525, at *2 (D. Nev. Sept. 29, 2018); *Bank of Am., N.A. v. Antelope Homeowners' Ass'n*,

---

[1] The Nevada Supreme Court has yet to weigh in on which limitations period applies to a lienholder's quiet title claim. Consequently, there is an intra-District split as to whether lienholders have four or five years to bring quiet title actions. To the extent there is any ambiguity as to NRS 11.070, the Court finds application of that statute's longer limitations period aligns with Ninth Circuit's guidance on conflicting statutes of limitations. *See Fed. Deposit Ins. Corp. v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1307 (9th Cir. 1989) ("[W]hen there is a 'substantial question' which of two conflicting statutes of limitations to apply, the court should apply the longer.") (quoting *Guam Scottish Rite Bodies v. Flores*, 486 F.2d 748, 750 (9th Cir. 1973) (applying longer statute of limitations when a claim had features of both an action in trespass and an action in ejectment)).

No. 2:16-cv-00449-JCM-PAL, 2017 U.S. Dist. LEXIS 13092, 2017 WL 421652, at *3 (D. Nev. Jan. 30, 2017). Because the Complaint in this action was filed less than five years after the March 6, 2013 foreclosure sale, BNYM's quiet title claim is timely. (*See* Compl., ECF No. 1) (filed April 18, 2016).

      ii. <u>Standing</u>

  SFR argues that BNYM does not have standing to enforce the DOT because BNYM does not provide proof that the promissory note and DOT were transferred to BNYM, and does not provide the original writing or certified copy showing the chain of ownership for the note and DOT. (SFR's Resp. 23:19–27:25, ECF No. 59). The Court finds that BNYM has standing to assert its quiet title claim.

  To the extent SFR argues that BNYM lacks standing to enforce the DOT because it has not produced evidence that the promissory note was endorsed in BNYM's favor, the Court disagrees. It is well established that an action to quiet title "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Moreover, BNYM provides documentation showing its chain of title regarding that DOT. (*See* Deed of Trust, Ex. 1 to BNYM's MSJ, ECF No. 43-1) (identifying MERS as the beneficiary of the DOT) (Assignment, Ex. 2 to BNYM's MSJ, ECF No. 43-2) (showing a transfer of the DOT from MERS to BNYM). Because SFR does not produce evidence to rebut the chain of title for the DOT in this case, there is no dispute of material fact about BNYM's assigned interest here. BNYM thus has articulated its chain of title, provided proper documentation, and has standing to pursue its quiet title claim. *See USROF IV Legal Title 2015-1 by U.S. Bank Nat'l Ass'n v. White Lake Ranch Ass'n*, No. 3:15-cv-00477-MMD-CBC, 2019 U.S. Dist. LEXIS 21659, 2019 WL 539037, at *3 (D. Nev.

Feb. 11, 2019) ("[T]he Court finds that as the holder of the DOT . . . [the holder] has standing to challenge the HOA Sale and to contend that the DOT has not been extinguished.").

### iii. Tender of the Superpriority Portion of HOA's Lien

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). The superpriority portion of the lien consists of "the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges," while the subpriority piece consists of "all other HOA fees or assessments." *Id.* at 411; *Horizons at Seven Hills Homeowners Ass'n v. Ikon Holdings, LLC*, 373 P.3d 66, 70–74 (Nev. 2016). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). In addition to full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, BNYM points to evidence indicating that at the time of A&K's recordation of the notice of delinquent assessment lien, the monthly common assessments were $58. (*See* A&K's Resp. Letter, Ex. 2 to Miles Bauer Aff., ECF No. 43-9). HOA's statement of account shows that HOA had not assessed any maintenance or nuisance abatement charges at the time of BAC's payment. (*Id.*). Thus, HOA's superpriority lien was limited to the sum of nine months' common assessments totaling $522.00. (*See* Tender Letter, Ex. 3 to Miles Bauer Aff.); (*see also* Confirmation of Receipt, Ex. 4 to Miles Bauer Aff.). Finally, BNYM has introduced evidence that Miles Bauer, on BAC's behalf, sent A&K a check for $592.20, which A&K refused to accept. (*Id.*). Consequently, because BAC's payment satisfied HOA's superpriority lien, BAC's attempted payment cured the default as to that portion of HOA's lien. SFR, for its part,

fails to put forth evidence creating a genuine issue of fact as to these points. (*See* SFR's MSJ, Statement of Undisputed Facts 3:15–8:16, ECF No. 46).

Rather, SFR argues that the tender was not valid because it was impermissibly conditional. (SFR's Resp. 15:23–25). It argues that the first Miles Bauer letter's assertion that the subpriority portion of the HOA's lien includes "fees and charges imposed for collection and/or attorneys fees, collection costs, late fees, service charges and interest" conditions the payment on agreement with that interpretation of law. (*Id.* 15:17–25). Preliminary, because it is undisputed that there were no maintenance and abatement charges during the relevant nine-month time period, acceptance of the letter's statement of law would not "requir[e] agreement that such charges are subordinate to the deed of trust." (*See* SFR's Resp. 16:4). Additionally, Miles Bauer included the allegedly conditional statement in a letter inquiring about the full amount of the superpriority portion of the lien before attempting payment; whereas, the letter accompanying tender includes language courts in this District have consistently found valid and unconditional. *See, e.g.*, *Bank of Am., N.A. v. Falcon Point Ass'n*, No. 2:16-cv-00814-GMN-CWH, 347 F. Supp. 3d 592, 2018 U.S. Dist. LEXIS 167719, 2018 WL 4682317, at *5 (D. Nev. Sept. 28, 2018) (Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. C to BNYM's MSJ, ECF No. 110-3); *Bank of Am., N.A. v. Toscano River Townhomes Ass'n, Inc.*, No. 3:16-cv-00196-RCJ-VPC, 2017 U.S. Dist. LEXIS 78325, 2017 WL 2259985, at *3 (D. Nev. May 23, 2017) (Tender Letter, Ex. 3 to Miles Bauer Aff., Ex. 6 to MSJ, ECF No. 30-6); *U.S. Bank, N.A. v. Emerald Ridge Landscape Maint. Ass'n*, No. 2:15-cv-00117-MMD-PAL, 2016 U.S. Dist. LEXIS 182560, 2016 WL 7826665, at *3 (D. Nev. Sept. 30, 2016) (Tender Letter, Ex. 3 to Miles Bauer Aff., ECF No. 40-8).

Additionally, SFR contends BNYM's evidence of tender runs afoul of the Federal Rules of Evidence. According to SFR, the HOA ledger is unauthenticated, lacks foundation, and contains hearsay, rendering the ledger inadmissible. (SFR's Resp. 6:23–27). SFR also objects

to BNYM's introduction of the written correspondence exchanged with A&K, which SFR asserts is inadmissible because they are not attested to by a custodian of records. (*Id.* 6:12–22). These contentions are without merit.

Contrary to the premise underpinning SFR's objections, evidence presented at the summary-judgment stage need only be admissible in substance, not form. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."). The Court is satisfied that the evidence presented, to the extent not presently admissible, can be introduced at trial consistent with the Federal Rules of Evidence. Indeed, the substance of the evidence upon which BNYM relies is corroborated by A&K's 30(b)(6) designee. (See A&K's 30(b)(6) Dep., Ex. 6 to BNYM's MSJ, ECF No. 43-6) (testifying to the contents of HOA's financial transactions ledger, confirming the amount of HOA's monthly assessments and Borrower's delinquency, and acknowledging receipt of BAC's check). The Court, accordingly, rejects SFR's evidentiary contentions.

Lastly, SFR is incorrect in its contention that equitable principles should prevent the tender payment from preserving BNYM's DOT. (*See* SFR's Resp. 18:26-21:26). Specifically, SFR states that BNYM waived its right to enforce the tender payment because the payment occurred back in 2011, yet this suit did not arise until 2017; that BNYM is equitably estopped from claiming it paid the superpriority portion this late; and that BNYM has unclean hands because BNYM did not take timely action to enforce its tender even after SFR purchased the Property. (*Id.*). As previously explained, BNYM brought this action within the applicable limitations period, and stated the purpose for its payment when it sent the accompanying letter. SFR does not cite other decisions that have found such equitable doctrines to prevent the enforcement of a valid tender under similar circumstances and facts. Indeed, later decisions in this District have found otherwise. *See Selene Fin., L.P. v. Saticoy Bay LLC Series 1168 Aspen*

*Cliff*, No. 2:16-cv-02618-JAD-NJK, 2019 U.S. Dist. LEXIS 88590, 2019 WL 2270588, at *5 (D. Nev. May 28, 2019).

Therefore, HOA's foreclosure sale was invalid to the extent it caused the extinguishment of the deed of trust. While the sale remains intact, BNYM's deed of trust continues to encumber the Property and SFR's interest is subject to this encumbrance. In light of this holding, SFR cannot prevail even if the Court were to find it was a bona fide purchaser for value. *See Bank of Am.*, 427 P.3d at 121 ("Because a trustee has no power to convey an interest in land securing a note or other obligation that is not in default, a purchaser at a foreclosure sale of that lien does not acquire title to that property interest."). Accordingly, BNYM's Motion for Summary Judgment is granted with respect to its quiet title claim; SFR's Motion as to the same is denied.

Because the Court limits BNYM's quiet title remedy to a declaration that the deed of trust continues to encumber the Property, there is no relief the Court can grant BNYM with respect to HOA and A&K.

### b. Breach of NRS 116.1113, Wrongful Foreclosure, and Injunctive Relief

In its prayer for relief, BNYM primarily seeks an "order declaring that SFR purchased the property subject to BNYM's senior deed of trust." (*See* Compl. 14:3–5, ECF No. 1). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.* 14:5–10). Therefore, because the Court grants BNYM summary judgment on its quiet title claim, the Court need not reach BNYM's remaining claims. Accordingly, the Court dismisses BNYM's second and third causes of action for wrongful foreclosure and breach of NRS 116.1113, respectively. With regard to BNYM's requests for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for BNYM moots these claims, and they are therefore dismissed.

### c. Motion for Default Judgment

SFR moves for default judgment against Borrower on its declaratory relief claim. (*See generally* Mot. for Default J., ECF No. 45). SFR has already complied with the two-step process required under Federal Rule of Civil Procedure 55. Specifically, pursuant to Rule 55(a), SFR has moved for clerk's entry of default, (ECF No. 40), and the Clerk subsequently entered default against Borrower on April 24, 2019, (ECF No. 42). In accordance with Rule 55(b), SFR brings the instant Motion requesting that the Court enter default judgment, (ECF No. 45).

Upon reviewing the documents and pleadings on file in this matter, the Court finds that the *Eitel* factors support entry of default judgment in favor of SFR, and against Borrower in this action. The first *Eitel* factor weighs in favor of default judgment. Courts in this district hold that a defendant's failure to respond or otherwise appear in a case "prejudices a plaintiff's ability to pursue its claims on the merits," and therefore satisfies this first factor. *See, e.g.*, *ME2 Prods., Inc. v Sanchez*, No. 2:17-cv-667-JCM-NJK, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *1 (D. Nev. Apr. 12, 2018); *Tropicana Entm't Inc. v. N3A Mfg., Inc.*, No. 3:16-cv-0257-LRH-VPC, 2018 U.S. Dist. LEXIS 75557, 2018 WL 2088871, at *2 (D. Nev. May 3, 2018).

Regarding the second and third *Eitel* factors, the Court finds SFR's crossclaim against Borrower is sufficiently pleaded and is meritorious with respect to its cause of action for declaratory relief. Specifically, SFR has introduced evidence establishing its interest in the Property is superior in relation to that of Borrower's. (*See, e.g.*, Foreclosure Deed, Ex. 6 to Mot. Default J., ECF No. 45-6); (Quitclaim Deed, Ex. 7 to Mot. Default J., ECF No. 45-6).

The fourth factor weighs in favor of default judgment because SFR seeks only declaratory relief and no monetary damages against Borrower. (Mot. Default J. 3:21–23). The fifth *Eitel* factor, which concerns the possibility of a dispute regarding material facts, favors

SFR.  There is no dispute concerning the material facts as SFR obtained its interest in the Property following the foreclosure sale after Borrower failed to stay current on its payment obligations. (*See* 3:11–20, *supra*).  Because this Order leaves the foreclosure sale intact, SFR's superior interest in the Property relative to that of Borrower is factually uncontroverted. Moreover, courts have recognized at the default-judgment stage that "[o]nce the clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages." *ME2 Prods., Inc.*, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *2 (quoting *O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 U.S. Dist. LEXIS 101941, 2010 WL 3636171, at *4 (D. Nev. Sept. 9, 2010)).

With respect to the sixth *Eitel* factor, the Court finds Borrower's failure to appear was not the result of excusable neglect.  Borrower was served on May 13, 2017, and his answer was due on June 3, 2017, (ECF No. 33).  The Clerk entered default against Borrower on April 24, 2019, (*See* ECF No. 42), and SFR filed the instant Motion on the same day, (*See* ECF No. 45). Borrower's failure to appear, respond to SFR's crossclaim, or otherwise file anything with respect to SFR's motions counsels against a finding of excusable neglect. *See ME2 Prods., Inc.*, 2018 U.S. Dist. LEXIS 61961, 2018 WL 1763514, at *3; *O'Brien*, 2010 U.S. Dist. LEXIS 101941, 2010 WL 3636171, at *6.

The seventh and final *Eitel* factor concerns public policy considerations.  While public policy generally favors disposition on the merits, the Court concludes that default judgment is appropriate in light of the other *Eitel* factors.

//

//

//

//

//

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Bank of New York Mellon's Motion for Summary Judgment, (ECF No. 43), is **GRANTED**.

**IT IS FURTHER ORDERED** that SFR Investments Pool 1, LLC's Motion for Summary Judgment, (ECF No. 46), is **DENIED**.

**IT IS FURTHER ORDERED** that SFR Investments Pool 1, LLC's Motion for Default Judgment, (ECF No. 45), is **GRANTED**.

The Clerk of Court shall close the case and enter judgment accordingly.

**DATED** this 20 day of February, 2020.

_____
Gloria M. Navarro, District Judge
United States District Court